IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ANDREW HEAD,                        )
                                    )
            Plaintiff,              )    TC-MD 170154R
                                    )
        v.                          )
                                    )
LANE COUNTY ASSESSOR,               )
                                    )
            Defendant.              )    **FINAL DECISION[1]**

Plaintiff Andrew Head (Head) appealed from a Lane County Board of Property Tax

Appeals (BOPTA) order, dated March 13, 2017, for the 2016-17 tax year, as well as Defendant's

real property assessments for the 2015-16 and 2014-15 tax years. A telephone trial was held on

December 18, 2017. Head appeared and testified on his own behalf. Faith Bowlsby (Bowlsby)

appeared and testified on behalf of Defendant. Head's Exhibits A to G were admitted into

evidence without objection.[2] Defendant's Exhibits A to H were admitted into evidence without

objection. On its own motion the court takes judicial notice of the real property tax statements

for the subject property which were attached to Head's complaint.[3]

## I. STATEMENT OF FACTS

The subject property contains a 5,903 square-foot home with several accessory structures

on 39.62 acres in Lane County. The property consists of a single tax lot broken into two

accounts (accounts 0745479 and 0745487). (Def's Ex A at 2.) Account 0745479 consists of

---

[1] This Final Decision incorporates without change the court's Decision, entered July 18, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Head's exhibits were mislabeled; Tax Court Rule – Magistrate Division (TCR-MD) 12 B(1) requires exhibits for the plainitff to be labeled numerically, not alphabetically.

[3] Neither party offered the real property tax statements as evidence. The court finds these documents are necessary for an analysis of the matter because the scope of appeal is at issue for the 2016-17 tax year.

Head's residence and accessory buildings with five acres of land, and account 0745487 consists of the remaining undeveloped acreage. Head purchased the property in 2007 for $450,000. (Def's Ex E at 42.) At the time, the home was 3,000 square feet. Head added on to the residence in late 2007 and early 2008, bringing the home to its current size. (Def's Ex A at 2.) In 2009, Head filed for a permit to construct an agriculture structure, and in 2013 Head filed a permit for a second agriculture structure. (*Id.* at 1.) Head testified that during construction, his girlfriend persuaded him to change the buildings into a commercial wedding and event venue. He testified that he did not think about the permit process related to the changes from agricultural use to living use. In 2015, Defendant conducted a site visit to the property and found the "agriculture" structures had been built with "living quality finish." (*Id.*) After a subsequent site visit in 2017, Defendant concluded that in the first "agriculture" building had 2,296 square feet of ground level living space, a 1040 square-foot apartment upstairs, 616 square feet of unfinished attic space, 4 full bathrooms, 2 half baths, a kitchen, and several fireplaces. (*Id.* at 2–4.) Defendant also found a covered gazebo and an event pavilion. In 2015, the county limited Head's use of the property as a wedding and event venue. Head testified that the Land Use Board of Appeals (LUBA) subsequently ruled that he was limited to four events per year.

Head testified that he worked on the accessory structures himself and paid his employees for their time at $15 per hour. He estimates that his actual cost for the buildings was $200,000 to $250,000. The buildings were in various stages of completion as of the three assessment dates at issue in this appeal. Head testified that because the county has limited the use of his property as a wedding and event venue, the value of the improvements is greatly diminished. He testified that he cannot rent an apartment contained within one accessory building because it is not permitted as living space.

Head presented an appraisal of the subject property as of June 22, 2013, which found the value using the sales comparison approach was $790,000 and the value using the cost approach was $928,272. (Ptf's Ex D at 2.) He testified that the value found by the appraisal was likely on the low side. He also testified that property values in his area were generally appreciating during the years at issue. Head testified the he decided against hiring a professional appraiser to determine the value of the subject property as of January 1, 2014, and January 1, 2015. Thus, he was unable to present a precise real market value of the subject property for the 2014-15 and 2015-16 tax years. Head suggested that the court could use the 2013 appraisal, a 2017 appraisal (described below), and county market trend information to determine a real market value for the 2014-15 and 2015-16 tax years.[4] For the 2014-15 tax year, the assessor's real property tax statement for account 0745487 listed the real market value at $677,007 and the assessed value at $580,738. The 2014-15 property tax statement for the bare land in account 0745479 had a real market value of $277,968 and an assessed value of $87,917. The 2015-16 property tax statement for account 0745479 had a real market value of $292,042 and an assessed value of $90,555. The property tax statement for the 2015-16 tax year for account 0745487 contained errors, which are discussed in more detail below.

Head testified that the real market value of the subject property as of January 1, 2016, was $1,103,150. He arrived at that value by referencing a June 2017 appraisal of the subject property prepared in connection with a loan refinance and making his own lay adjustments to comparable properties. The appraiser valued the property and improvements using the comparable sales approach at $1.2 million as of June 21, 2017. (Ptf's Ex C at 3.) The appraiser also developed but did not rely on the cost approach, which indicated the value was $1,751,880.

---

[4] After the close of his case-in-chief, Head testified that trending indicated a real market value of $1,050,000 for the 2015-16 tax year.

Head testified that the cost approach value shows that his property was over-improved. For the 2016-17 tax year, the assessor's real property tax statement for account 0745487 showed a real market value of $1,190,837 and an assessed value of $938,849. For that year the assessor's real property tax statement for account 0745479 showed a real market value of $292,042 and an assessed value of $93,272.

Bowlsby testified that she has been an appraiser for Defendant for seven years. She testified that she put a "hold" on the value of the vacant land portion of the tax lot due to an easement for power lines, which lowered the real market values of account 0745479 to $230,713 for 2014-15, and $242,395 for 2015-16 and 2016-17. She testified that she performed appraisals for each of the tax years at issue which reflected both accounts in the tax lot. She testified that she agrees with Head that the accessory buildings on Head's lot should not be evaluated as if they were living space.

Bowlsby used Marshall & Swift Valuation Service to estimate the cost to construct each outbuilding during the years at issue. For 2014-15, Bowlsby's analysis indicated a cost of construction for the event pavilion and gazebo of $370,940; however, Defendant did not request that the court change the exception real market value for that year, which was $40,940. (*See* Def's Ex B at 1.) For 2015-16, Bowlsby estimated that the cost of constructing new improvements on the property was $274,061. (*Id.* at 3.) Defendant has requested a new construction exception value of $274,061 for the 2015-16 tax year. For 2016-17, Bowlsby estimated that the cost of constructing new improvements on the property was $183,674. (*Id.* at 4.) Defendant has requested a new construction exception value of $118,219 for the 2016-17 tax year.

/ / /

Bowlsby presented a market analysis for each of the three years at issue. (Def's Ex D.) For each year, she used four comparable properties. She adjusted the comparables for size of the lot, total gross living area, garage capacity, bathrooms, and whether they had accessory buildings on the lot. Bowlsby explained that because the property is rural rather than urban, the accessory buildings would have a lower contributory value. Bowlsby testified that she completed a paired sales analysis to determine the contributory value of the accessory buildings, which indicated a value range of $130,000 to $160,000. Accordingly, Bowlsby made positive adjustments of $145,000 to comparable properties with no accessory buildings for tax years 2015-16 and 2016-17. (*See* Def's Ex D at 12, 21.) Two of the comparables she relied upon were also used in Head's appraisal. (Ptf's Ex D at 2.) Since the living area was larger than the comparables, Bowlsby adjusted the properties at approximately $90 per square foot. She testified that the total real market value for the property as a whole was $907,720 for 2014-15, $1,181,781 for 2015-16, and $1,300,000 for 2016-17.

Bowlsby testified that in 2015, Defendant made a clerical error when inputting improvements to account 0745487 on the tax billing software for the 2015-16 tax year. Bowlsby explained that the new construction real market value was "posted out of order" in Defendant's appraisal software and, as a result, the wrong dollar amount of real market value was "pushed over" to the billing software. Due to that error, Defendant listed the real market value on the property tax statement at $676,365, which represented the trended real market value without the addition of any new construction. Bowlsby testified that based on the additional accessory buildings Defendant should have listed the real market value at $1,050,416. However, it seems that the maximum assessed value was increased to $890,256 to reflect the addition of new

improvements to the property.[5]  The upshot of this error was that the assessed value on the account was determined to be $676,365 instead of $890,256.  Bowlsby testified that she found this error during settlement discussions with Head.  She explained that rather than going through the process of correcting the rolls via ORS 311.205,[6] Defendant was requesting that the court make the corrections per the evidence presented at trial.

Head appealed to BOPTA for the 2016-17 tax year.  Bowlsby testified that Head also requested that Defendant correct a square-footage error, but he made the request after the deadline to correct the error for the 2016-17 tax year.  Defendant inspected the subject property in February 2017 and reduced the square footage of the living area in one of the accessory buildings and made other changes to the description of that building.  Bowlsby testified that the decrease to the maximum assessed value resulting from the square footage error was roughly equivalent to the increase in maximum assessed value resulting from new construction.  (*See* Def's Ex A at 4.)  Consequently, BOPTA, based on Defendant's recommendations, reduced the real market value of account 0745487 to $1,158,312 for 2016-17 and deleted the new construction value, thus reducing the maximum assessed value to $890,256.  (*See id.*)

## II.  ANALYSIS

The main issue before the court is the real market value of the subject property for the 2014-15, 2015-16, and 2016-17 tax years.  One challenging aspect in valuing the subject property is that Head continued to build significant accessory structures on the subject property during the tax years at issue, which did not conform to building permits he received.  Head built these structures with permits obtained for agricultural buildings, but he actually intended that

---

[5] The court writes "seems" because, as Bowlsby explained, Defendant's real property tax statements do not include a separate line for maximum assessed value.  However, this point is evident from Bowlsby's testimony and the court's review of the 2015-16 property tax statement and the 2016-17 BOPTA order.

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

they be used as a premium wedding venue. Ultimately, the county restricted Head's right to use his property as he intended. This resulted in what the parties seem to agree is a situation where the property's value is significantly less using a sales comparison approach than it would be using the cost approach. Head argues that the real market value and the maximum assessed value should be adjusted to reflect the lower value as a result of "over improvements."

A further complication is that during the pre-trial stage Defendant discovered it had made a "clerical error" for the 2015-16 tax year, which resulted in a lower real market value and, ultimately, a lower tax bill for Head for that year. Defendant asserted that rather than go through the process to correct the tax rolls as a clerical error (*i.e.*, ORS 311.205), the court could make the adjustments as part of its decision. In analyzing the case, the court will first discuss Head's request to lower the subject property's real market value. Next the court will address Head's request to lower the maximum assessed value. Then, the court will address Defendant's evidence of the real market value. Finally, the court will discuss Defendant's request to correct its clerical error and increase the real market value and assessed value for the 2015-16 tax year.

A.    *Head's Evidence of Real Market Value*

Real market value is defined in ORS 308.205(1), which states:

"Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). The three approaches to value that must be considered are: (1) the sales comparison approach; (2) the cost approach; and (3) the income approach. OAR 150-308-0240(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id*.

Here, both parties relied on the sales comparison approach but also considered the cost approach. The income approach was not appropriate for this rural, residential property.

The proponent of an issue before the court bears the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. The real market value of property must be established by "competent evidence," which includes "appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD 110300D, WL 879285 (Or Tax M Div, Mar 13, 2012). Head will have the burden of proof to decrease the property values, and conversely, Defendant will have the burden for an increase in values. The assessment dates for the tax years at issue are January 1, 2014, January 1, 2015, and January 1, 2016. ORS 308.007; ORS 308.210.

Before delving into the specifics of Head's valuation evidence, the court must first look at whether that valuation as asserted in the complaint or at trial demonstrates a claim for which the court may grant relief. In *Work v. Dept. of Rev.*, __ OTR __, WL 3135940 (Or Tax, July 20, 2017), the court succinctly described "four routes to obtain relief of [real market value] or [maximum assessed value]." *Id.* at *6.

The first route requires taxpayers to appeal their property value to BOPTA prior to December 31 of the tax year appealed. ORS 309.100(2). A BOPTA decision may then be appealed to the tax court within 30 days. ORS 305.280(4). Head did not appeal to BOPTA for the 2014-15 or 2015-16 tax years, and thus he may not use this route. Head did timely appeal to BOPTA and to this court for the 2016-17 tax year, and the court now turns to Head's evidence of value for that tax year.

/ / /

Head presented appraisal reports prepared by licensed appraisers in 2017 and 2013, but he chose to prepare his own comparable sales analysis as evidence of the property's value as of January 1, 2016. The court has a few concerns with Head's analysis. First, Head is not a licensed or trained appraiser. Head testified that he relied on the 2017 appraisal and Bowlsby's work to make "fair and accurate" adjustments to the comparable properties. To the extent that Head made adjustments based on the 2017 appraisal, he relied on the judgment of an appraiser who was not available to testify as to why those adjustments were appropriate. Second, Head himself cast doubt on whether his adjustments for below-ground living area were appropriate. Head, as in the 2017 appraisal, made a $90 per-square-foot positive adjustment for above-ground living area and made a $50 per-square-foot negative adjustment for below-ground living area. However, Head testified and wrote in his analysis that the above-ground and below-ground areas in the high-end properties were of comparable quality and finish, suggesting that such adjustments might not be necessary. (Ptf's Ex E at 1.) Finally, as Head candidly acknowledged, the gross adjustments to most of his comparables were high, which suggests that the properties may not be truly comparable. *See Agripac, Inc. v. Dept. of Rev.*, 11 OTR 371, 376 (1990). Ultimately, the court cannot find that Head has presented "competent evidence" of the subject property's real market value for 2016-17. *See Danielson*, TC-MD 110300D at *7.

For the second route, taxpayers may ask the Department of Revenue to exercise its supervisory authority over assessors to correct valuation errors. ORS 306.115(1). The Department may use this authority "for the current tax year and for either of the two tax years immediately preceding the current tax year." ORS 306.115(3). No evidence was presented to show that Head made such a request to the department. Thus, he may not use this route.

/ / /

In the third route, a taxpayer may proceed under ORS 305.288(1). "That statute directs this court to order changes or corrections to [real market value] for the current tax year and the two immediately preceding years where the property is a dwelling and the [real market value] assessment differential is equal to or greater than twenty percent." *Work*, 2017 WL 3135940 at *6 (citations omitted). Head did not present direct evidence of the subject property's value for the 2014-15 and 2015-16 tax years. Instead, he submitted appraisals conducted in 2013 and 2017, and his own lay appraisal for 2016, and suggested that the court could use market trend information to determine values for the 2014-15 and 2015-16 tax years. Even if the court were inclined to use trending to determine the real market value, that approach does not account for the value added by new construction in each tax year. Head did not present evidence of a twenty percent error in the real market value for the 2014-15, 2015-16, or 2016-17 tax years. Indeed, he did not submit persuasive evidence proving any value of the subject property for any of the tax years at issue. Thus, Head may not proceed under ORS 305.288(1).[7]

"Fourth, and finally, the court may order a change or correction to the current tax year and the two immediately preceding tax years under ORS 305.288(3) if the taxpayer has no statutory right of appeal remaining and the court determines that good and sufficient cause exists for the taxpayer's failure to purse the statutory right of appeal." *Work*, 2017 WL 3135940 at *6. Head did not present sufficient evidence to show good and sufficient cause existed for his failure to timely appeal his 2014-15 and 2015-16 tax assessments. Further, even if good cause were

/ / /

---

[7] ORS 305.288(1) may be used to appeal "a separate assessment of property" that is "used primarily as a dwelling." The subject property in this case is a single tax lot split into two accounts; one account contains a dwelling, and one account contains only bare land. It is questionable whether ORS 305.288(1) can be used to appeal Account 0745479, the bare land account, because that account does not contain a dwelling. However, the parties have not raised this issue, and the court's conclusion that Head has failed to carry his burden of proof means that Head's appeal fails under ORS 305.288(1) in any event.

shown, Head's failure to present persuasive valuation evidence as to those years prevents the court from ordering a change in his favor.

B.    *Head's Request to Lower the Maximum Assessed Value*

Head argues that if his real market value is decreased then his maximum assessed value should go down proportionately. However, adjustments to the maximum assessed value are determined by a statutory calculation which is detached from the real market value. *See* ORS 308.146. Generally, a maximum assessed value increases three percent per year unless an exception occurs. One exception, which is applicable in this case, is "new improvements to property." ORS 308.146(3)(a). In such an event, changes to the maximum assessed value "must be determined as provided in ORS 308.149 to 308.166." *Id*.

Head seeks a reduction in the maximum assessed values for the tax years at issue. ORS 305.288(2) provides:

> "If the tax court finds that the conditions needed to order a change or correction under subsection (1) of this section exist, the court may order a change or correction in the maximum assessed value of the property in addition to the change or correction in the real market value of the property."

As noted above, the court does not find the conditions needed to order a change in the real market value for Head under 305.288(1); therefore, the court is unable to order a change in the maximum assessed value for the tax years at issue.

C.    *Defendant's Evidence of Real Market Value*

Often in property tax valuation cases, where a plaintiff fails to meet his or her burden of proof, the analysis ends. However, under ORS 305.412 "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." The same rules analyzed above for Head apply: As a proponent of a request to increase value, Defendant must prove at least a twenty percent

change in real market value or good cause for failing to file an appeal to allow the court to order a change in the assessments for the 2014-15 and 2015-16 tax years. For the 2016-17 tax year, Defendant needs to show that Head's taxes would increase as a result of the value change.

The court begins with the 2014-15 tax year. With respect to account 0745487, Defendant has merely asked the court to sustain the tax roll values. That would be the result in any event because, as discussed above, Head has not demonstrated that he is entitled to any relief for that year. With respect to account 0745479, Defendant has recommended that the court decrease the real market value from $277,968 to $230,713. However, the court will only order a correction to the roll if a party is "aggrieved"; or in other words, for the court to order a correction in a taxpayer's favor, he or she must receive some tax relief. *See Paris v. Dept. of Rev.*, 19 OTR 519, 521 (2008). Defendant is not aggrieved by the value it placed on the roll. And even if the court were to treat Defendant's requested real market value as a concession to Head, Defendant's requested value is not less than the 2014-15 assessed value of $87,917. In *Parks Westsac LLC v. Dept. of Rev.,* the court ruled that a taxpayer is not aggrieved "[s]o long as the property's maximum assessed value is less than its real market value[.]" 15 OTR 50, 52 (1999). Taxpayers in that situation are not aggrieved because taxes are imposed on assessed value, and under ORS 308.146(2), assessed value is the lesser of real market value or maximum assessed value. *See also* Or Const, Art XI, § 11(1)(b). Thus, even if the court accepted Defendant's concession on real market value, the change would not lower Head's tax burden. Thus, Head is not aggrieved, and the court is unable to order the change to the real market value for the 2014-15 tax year.[8]

///

---

[8] No evidence was presented to show Head's tax account was in compression. "Compression is the process required by Article XI, section 11(b)(4), of the Oregon Constitution in those cases where the taxes on a property exceed either or both the categorical limits found in Measure 5." Henry C. Breithaupt and Jill A. Tanner, *The Oregon Tax Court at Mid-Century*, 48 Willamette L Rev 147, 187 (2011).

For 2015-16, Defendant's requested values do not match the testimony provided. In particular, the value for the accessory buildings does not match Bowlsby's testimony that they should be valued as agricultural buildings (*See* Def's Ex D at 12.) Defendant requested a real market value of improvements for account 0745487 of $891,241, which includes $274,061 of new construction exception value. The new construction value appears to be based on Bowlsby's estimated cost of construction using Marshall & Swift Valuation Service. Defendant's reliance on the cost approach to determine new construction value for tax year 2015-16 is at odds with other evidence in this case. In particular, the value assigned to new construction on the accessory buildings ($274,061) is contradicted by Bowlsby's testimony that the total contributory value of the accessory buildings was $145,000. In her sales comparison analyses for 2015-16 and 2016-17, Bowlsby made positive adjustments of $145,000 to properties with no accessory buildings. The court cannot reconcile the testimony and evidence presented and thus must conclude that Defendant has failed to meet its burden of proof with respect to the 2015-16 tax year.[9]

For the 2016-17 tax year, the court will first address a problem with the scope of the appeal. Head testified that he appealed to BOPTA on both accounts, but despite the Complaint's inclusion of both accounts, the court received a BOPTA order on only one account. Bowlsby testified that only one account was appealed to BOPTA. Whether account 0745479 was in fact appealed to BOPTA raises a question as to this court's authority to order a change to that account. *See* ORS 305.275(3) ("If a taxpayer may appeal to [BOPTA] under ORS 309.100, then no appeal may be allowed under [ORS 305.275]." However, it is unnecessary for the court to

---

[9] The problem of aggrievement with respect to Account 0745479 is also present in in the 2015-16 tax year. Defendant has requested a real market value that is lower than the roll value but higher than the maximum assessed value. Thus, even if the court considers that account alone, it is unable to order a change.

resolve that question because the value requested by Defendant for account 0745479 ($242,395) is well above the maximum assessed value of $93,272. Defendant's request would not result in a change to Head's tax liability for account 0745479, and the court will not order such a change. *See Parks Westsac,* 15 OTR at 52.

The BOPTA order relates to account 0745487, which included the improvements and five acres of land. The court finds that the evidence presented for 2016-17 suffers from the same flaws as the evidence in 2015-16. Defendant's recommended values for 2015-16 and 2016-17 include a total of $392,280 of new construction exception value attributed to the accessory buildings ($274,061 for 2015-16 plus $118,219 for 2016-17). Yet Bowlsby testified that the contributory value of the accessory buildings was $145,000. In her sales comparison analyses, Bowlsby made positive adjustments of $145,000 to comparable properties with no additional buildings in both 2015-16 and 2016-17, indicating that the contributory value of the accessory buildings did not change over that period. The court cannot reconcile that evidence with Defendant's request to add $118,219 of exception value in 2016-17.

In addition, the cost approach indicated cost of new construction in 2016-17 of $183,674, which is greater than the exception value requested by Defendant. Thus, Defendant's requested exception value does not appear to be supported by either the cost or sales comparison approaches.

Ultimately, the court finds the evidence presented by Defendant is incomplete and unpersuasive; the court cannot rely on it to establish a real market value for the account on appeal from BOPTA.

/ / /

/ / /

D.    *Defendant's Request to Correct the 2015-16 Rolls*

Bowlsby testified that a clerical error caused Defendant to mail Head a tax bill with the real market value and assessed value at $676,365 for the 2015-16 tax year.  She testified that the real market value should have been $1,050,416 and the maximum assessed value was $890,256. Defendant argued that the court could make corrections as part of its decision to modify the real and maximum assessed values.  However, as determined above, the evidence was not sufficient for the court to make the adjustments.  Additionally, changes to the maximum assessed value require more than just evidence of cost of the additions; there are other adjustments required. *See* ORS 308.149 to 308.166.  During trial, Head objected to Defendant's request to make a correction to the tax rolls for a clerical error, because that issue was first presented during trial. The court sustains Heads' objection.  While Defendant may be able to correct the error on the tax rolls pursuant to ORS 311.205, it will have to satisfy the statutory requirements and provide Head with sufficient notice and an opportunity to be heard.

## III.  CONCLUSION

After careful consideration, the court finds that both Head and Defendant failed to meet their respective burdens of proof.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Head's appeal is denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Defendant's requests to increase the real market value, maximum assessed value, and to correct the rolls for the tax years at issue are denied.

Dated this ____ day of August, 2018.

---

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Davis and entered on August 6, 2018.*